## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THERESA ALWOOD, | ) | |
| DEBORAH HERMERDING, and | ) | |
| PAUL THOMPSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 05-cv-0580-MJR |
| | ) | |
| BRENT CLARK, in his capacity as | ) | |
| Superintendent, and | ) | |
| BELLEVILLE TOWNSHIP HIGH | ) | |
| SCHOOL DISTRICT NUMBER 201, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### A. BRIEF SYNOPSIS OF THE CASE AND THE COURT'S RULING

Plaintiffs, parents of students at one of the two high schools that comprise Belleville Township High School District 201 ( Belleville Township High School East and Belleville Township High School West) brought suit in their names seeking injunctive relief. They claim, inter alia, their Constitutional rights to due process were violated when the District 201 School Board ("Board") passed a revised dress code which included the former dress code but also mandated certain colors and was more restrictive regarding the style of dress. The plaintiffs claim the Board violations included lack of due process in not following state open meeting laws; lack of due process in not ensuring persons affected by the dress code revision had input into it; lack of due process in not following the Board's own policies by discussing matters not on the agenda at a specially called meeting; and lack of due process by voting on the dress code without appropriate notice. The dress

-1-

code itself is not challenged on its merits–only the procedure adopting it is in dispute.  The Court

rules that 1) the  conduct complained of does not offend the Constitution; 2) the procedures used in

passing the dress code did not violate the school code; and 3) plaintiffs have not met their burden

in proving the necessary elements to prevail on their Motion for Preliminary Injunction.

Consequently, the Court declines the invitation to enjoin the implementation of the dress

code.  The Lancers and Maroons are to attend school on Monday, August 29, 2005 dressed

consistent with the "Standardized Dress Policy" as passed by the Board when it met and voted on

March 21, 2005. Students who do not heed the policy are subject to the sanctions listed in the

student handbook.

## I.  PROCEDURAL HISTORY

On March 21, 2005, the School Board of Belleville Township High School District

201 adopted a "uniform policy" specifying a dress code for students at Belleville East and West

High Schools. (Compl. ¶65.) This policy was created by Defendant School District and a "Uniform

Committee"[1] composed of teachers, parents, and students.  (Id. ¶¶24-30.)  This committee met nine

times between September 14, 2004 and February 7, 2005 to create and revise the dress code.  (*Id.*)

The new dress code incorporates much of the predecessor dress code but adds additional restrictions

on the style and color of clothing that may be worn.  (Pls' Exs.  14, 16.) The Plaintiffs, parents of

several high school students at the District's two high schools (Belleville East and West), filed suit

in their own names in the Circuit Court for the Twentieth Judicial Circuit in St.  Clair County,

Illinois on August 8, 2005.  (Compl.  p.  1.)  They sought injunctive relief only.  (*Id.*) The complaint

---

[1]     The term "uniform" is a misnomer in the context of this lawsuit because
        uniforms are not mandated.  Instead, a dress code was created that
        required, among other things, a limited choice of clothing color.

alleges that in creating and adopting the revised dress code policy, Defendant School District failed to comply with Illinois state law administrative procedures (specifically, the Open Meetings Act) (*Id.* ¶¶66-84), with the Illinois School Code, and with the School Board's own policies, and thereby violated Plaintiffs' right to due process under Amendment XIV of the United States Constitution. (*Id.* ¶¶85, 92, 102.)  Plaintiffs also allege a violation of their right to free speech under Amendment I of the United States Constitution.  (*Id.* ¶89 and n. 5.)  Also on August 8, 2005, Plaintiffs filed a motion requesting that the Circuit Court issue a temporary restraining order **(Fed. R. Civ. P. 65(b))** and preliminary injunction **(Fed. R. Civ. P. 65(a))** delaying the implementation of the policy when the school year begins until such time as this matter is resolved.  (Doc. 1.)  The dress code itself is not challenged on its merits—only the procedure adopting it is in dispute. The school year is scheduled to begin Monday, August 29, 2005.

On August 11, 2005, then-Defendant Kurt Schroder filed a notice of removal of the action to federal court (Doc. 1) pursuant to **28 U.S.C. §1441(a) and (b)**.  As required by **28 U.S.C. §1446(a)**, Defendant stated in support of removal that this Court has federal question jurisdiction under **28 U.S.C. §1331** by virtue of the Plaintiffs' invoking Amendments I and XIV of the United States Constitution.  (*Id.*)  On August 12, 2005, the Court held a status conference on the matter (Doc. 3), and at that conference, the Court ordered that briefs discussing federal subject matter jurisdiction be submitted by noon on August 15, 2005, and set oral argument on the issue of this Court's jurisdiction for 9 A.M. on August 16, 2005.  (Doc. 4.)

Immediately after the status conference, Plaintiffs filed a motion to remand the case to the Circuit Court (Doc. 5.)  As ordered, on August 15, 2005, Plaintiffs filed a memorandum in support of their motion, Part II of which is a brief arguing against federal jurisdiction.  (Doc. 13.)

Also as ordered, Defendants filed a brief in support of federal question jurisdiction, set within a motion opposing Plaintiff's motion to remand. (Doc. 14.)

Upon consideration of the parties' jurisdictional memoranda and immediately after the August 16, 2005 oral argument on jurisdiction, the Court verbally issued a finding that it does have federal question subject matter jurisdiction over the case. A full discussion of the reasoning behind this finding follows in Part II *infra* of this Memorandum and Order. The Court then set a hearing on Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction for 1:30 P.M. the same day. Defendants requested that all named Plaintiffs attend the hearing to be available if necessary as witnesses. Because one Plaintiff, Don Bevirt, could not be present at the hearing, and apparently did not have claims distinct from the other Plaintiffs, he was dismissed upon oral motion of the Plaintiffs and without objection. Individual Defendants Eckert, Highsmith, Scharf, Schroeder and Wagner were also terminated as unnecessary parties on Plaintiffs' oral motion and without objection. Because the only remaining parties in the case all had been served with notice, the motion for a temporary restraining order was converted into a motion for preliminary injunction under **Fed. R. Civ. P. 65.** Defendants filed their answer to Plaintiffs' complaint on the same day, before the hearing began.

The hearing on Plaintiffs' motion for a preliminary injunction began as scheduled on August 16 and was completed on the morning of August 17, 2005. Plaintiffs presented several witnesses. Plaintiff Hermerding described the harm she suffered as the result of the Board's action to include: (1) monetary loss because her son is the same size this year as last and so she had no intention of purchasing new clothes for him; (2) the inconvenience of doing laundry more frequently because she may buy fewer clothes that comport with the policy; and (3) her offer to volunteer for

the uniform committee was shunned.  Thompson was an unsuccessful candidate for the Board and one plank of his election platform involved the dress code.  He thought the process for implementing the dress code was flawed and when the Court inquired as to his opinion whether the new dress code would be more or less costly than its predecessor, he could not respond without speculating. Plaintiffs also called as a witness Brent Clark, Superintendent of District 201 and a defendant in his official capacity.  Clark was formerly the Superintendent in Benton, Illinois and holds a Doctorate in Education.  He supplied the rationale for the recommended changes in the dress code, which is discussed briefly in Section II.B *infra*.  Plaintiffs also called School Board member and ex-defendant Kurt Schroeder and School Board secretary Lois Luther as witnesses.

After Plaintiffs rested their case, Defendants moved for judgment as a matter of law under **Fed. R. Civ. P. 52©).**  The Court ruled that the motion would be argued at the same time that closing arguments were to be given during that day's hearing.  Defendants declined to present witnesses or introduce other evidence, and renewed their motion for judgment as a matter of law. Plaintiffs then gave their closing argument.  Defendants then gave their closing argument and their arguments in support of their motions for judgment as a matter of law.  Plaintiffs then gave their argument in opposition to the summary judgment motions.  The Court adjourned, and now enters this memorandum and order regarding its jurisdiction, Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction and Defendants' Motions for Judgment as a Matter of Law.

## II.  FEDERAL QUESTION JURISDICTION

### A.  GENERALLY

"The district courts shall have original jurisdiction of all civil actions arising under

-5-

the Constitution, laws, or treaties of the United States." **28 U.S.C. §1331.** A leading case on the issue of whether the introduction of a right protected by the United States Constitution is sufficient to create federal question jurisdiction is ***Gully v.  First Nat'l Bank*, 299 U.S. 109 (1936)**.  In that case, the Supreme Court declared that:

> To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.  The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.

***Id.*  at 112 (internal citations omitted).** *Gully* was reviewed and approved in ***Franchise Tax Bd. v. Constr.  Laborers Vacation Trust*, 463 U.S. 1 (1983)**, and this Court follows it in the instant case. The Court must examine whether the two federal rights alleged in Plaintiffs' complaint to have been violated are essential to the outcome of the case.  This examination takes place in the context of the Plaintiffs' complaint as it exists at the time of removal, not in the context of later amended complaints or dismissed claims.  ***See Gossmeyer v.  McDonald*, 128 F.3d 481, 488 (7th Cir. 1997)("Whether subject matter exists is a question answered by looking at the complaint as it existed at the time the petition for removal was filed. . . . Once an action is properly removed . . ., amendment of the complaint . . . does not defeat the original removal.").**

## B.  FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

Plaintiffs allege that Defendant School District violated the First Amendment of the United States Constitution by restricting logos on clothing to the size of a half-dollar, "thereby

depriving students of their ability to communicate political messages, or otherwise engage in free speech." (Compl. ¶89 n.5.)  However, no student is a plaintiff in the case, and no parent sued as parent/guardian or next friend of a student.

In *Tinker v.  Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505-06 (1969), the Supreme Court ruled that students do have a First Amendment right to express political opinions at school.  "It can hardly be said that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Id.* at 506. However, *Tinker* also recognized "the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Id.* at 507.  *Tinker* also recognized that a school should be able to suppress speech that is likely to result in disruptions or violence.  *Id.* at 508. Furthermore, it is well-settled law that students' First Amendment rights in public schools "are not automatically coextensive with the rights of adults in other settings," *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986), and should be considered "in light of the special characteristics of the school environment," *Tinker*, 393 U.S. at 506. The uniform policies adopted by Defendant School District have, inter alia, the following stated purposes:

> The purpose of a standardized dress policy is to improve the learning environment, reduce classroom distractions, bridge socio-economic differences between students, increase student's [sic] self-respect and self-esteem, enhance student security, and enable a cost saving [sic] for families.  A standardized dress policy allows students to focus on their academics rather than on peer pressure related to fads and/or costly attire.

(Compl. ¶34 and Ex. F.)  If First Amendment issues are heard in the case, which one would expect given the allegations in the complaint, the Court would have to decide whether the policy as adopted

and the purposes therefor are within the extent to which schools may suppress the First Amendment rights of their students.  Therefore the complaint presents a federal question with respect to the First Amendment.

## C.  FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

Plaintiffs have alleged that Defendants violated state law administrative procedures (Compl.  ¶¶66-84) and that in so doing, violated their right to procedural due process under the Fourteenth Amendment to the United States Constitution (Compl.  ¶¶85, 92, 102).  The Plaintiffs have alleged they enjoy a federal substantive due process right, conferred by state law and state administrative procedure codes, to a certain level of participation in the process whereby Defendant School District adopted the dress code policy, and that Defendant School District violated the right in adopting the policy at issue.  (Compl.  ¶¶66-95.) The alleged violation of the substantive and procedural due process rights present an additional source of federal subject matter jurisdiction.

## D.  FEDERALISM ISSUES AND *BURFORD* ABSTENTION

The Supreme Court has frequently expressed the view that "the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local officials, and not of federal judges." *Hazelwood Sch.  Dist.  v.  Kuhlmeier*, 484 U.S. 260, 273 (1988); *see also, e.g.*, *Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 208 (1982); *Wood v. Strickland*, 420 U.S. 308, 326 (1975); *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968).  Due to concerns over federal interference in an area traditionally reserved almost exclusively to state and local bodies, the Court raised *sua sponte* the possibility of abstaining from accepting jurisdiction over the case at bar.  Plaintiffs invited the Court to abstain from exercising its jurisdiction by invoking what is known as "*Burford* Abstention."

Generally, state administrative processes should not be interrupted by the exercise of federal jurisdiction over lawsuits those processes might create. ***Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).** Federal courts sitting in equity have the option to decline jurisdiction "when the result is to permit a state court to have an opportunity to determine questions of state law which may prevent the necessity of decision on a constitutional question," ***Chicago v. Fieldcrest Dairies*, 316 U.S. 168, 173**, or where "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," ***Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)**.  However, the fact that the state and federal courts have concurrent jurisdiction is not sufficient reason for a federal court sitting in equity to abstain from hearing the case.  ***Alabama Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341 (1951).** Furthermore, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." ***Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).** The circumstances under which a federal court may decline to exercise its jurisdiction are narrow indeed.

In the instant case, the state of Illinois has clearly established its policy, so the exercise of jurisdiction by this Court would not interfere with a state attempt to do so.  No question of state law is presented that is so complex or that is of such overriding importance as to outweigh the federal questions raised in Plaintiffs' complaint.  Therefore this Court will not abstain from exercising its jurisdiction and will hear the case, as well as state law claims thereunder, pursuant to its supplemental jurisdiction under **28 U.S.C. §1367**.

### III.  PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

To obtain a preliminary injunction, the movants must show, and have the burden of

-9-

proving, each of the following substantive elements: (1) a reasonable likelihood of success on the merits of the underlying claim; (2) that there is no adequate remedy at law; and (3) that the movants will suffer irreparable harm if the injunction is not granted.  ***Ty, Inc.  v.  Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir.  2001).**  If, and only if, the movants meets this threshold burden, the Court must consider two additional elements before issuing a preliminary injunction: (4) balance the harms to the respective parties, with the required balance in favor of the movants being inversely proportional to the movants' likelihood of success on the merits; and (5) the public interest and the effect that granting the injunction will have on non-parties.  ***Ferrell v.  U.S. Dep't of Housing & Urban Dev.*, 186 F.3d 805, 811 (7th Cir. 1999); *Licini Italia Co.  v.  Grappolini*, 288 F.3d 1035, 1038 (7th Cir.  2002).**

The Court will examine each of the elements in turn.

## A.  LIKELIHOOD OF SUCCESS ON THE MERITS

At the outset, the Court notes that two issues contained in Plaintiffs' pleadings were entirely abandoned at the hearing on their motion for preliminary injunction.  Plaintiffs did not present any evidence or argument based on the First Amendment to the United States Constitution, or based on the substantive due process rights guaranteed under the Fourteenth Amendment.  It is noteworthy that Plaintiffs do not challenge the content of the dress code or the constitutionality of it.  Moreover, they concede that the Board could cure the defects alleged within a manner of weeks—and end up with the exact same dress code—by appointing a committee of those affected by the new policy, giving due notice of a vote on it, and by waiving the initial reading and voting in its favor.  The March vote which passed the disputed policy was five  in favor, one against and one not present to vote.  Board President Schroeder opines that if a new vote was taken today, given

-10-

the change in the Board's makeup as a result of a new election, the vote would be six in favor and one against.  But the Court will not speculate.  A re-vote was and is unnecessary, because as discussed *infra*, the procedures followed  were not a violation of state law or of the United States Constitution.

This abandonment of some allegations from Plaintiffs' complaint left as the substance of Plaintiffs' argument claims based on the procedural due process rights guaranteed under the Fourteenth Amendment, and the state law claims upon which that argument rests.  Plaintiffs state in their submission of authority and points of relevancy (Doc.  26) that they have not alleged a violation of substantive due process, but this seems to flatly contradict ¶¶85 and 87-89 of their complaint. Therefore, the Court treats this issue briefly and moves on to the two claims actually presented and argued at the hearing.

### 1.  Substantive Due Process under Amendment XIV

"[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." ***Pennhurst State Sch. & Hosp.  v.  Halderman***, 465 U.S. 89, 106 (1984).  It follows that "[o]bligations of state bodies under state law should be determined by state courts unless there is a very good reason why the federal court should intervene." ***Shegog v.  Bd.  of Ed.  of the City of Chicago***, 194 F.3d 836, 838 **(7th Cir.  1999);** *see also, e.g.,* ***Int'l Coll.  of Surgeons v.  Chicago***, 153 F.3d 356 (7th Cir.  1998); ***Van Harken v.  Chicago***, 103 F.3d 1346 (7th Cir.  1997).  An *individual* "property" right must exist for a violation of state law to rise to the level of a federal question.  ***See Upadhya v.  Langenberg***, **834 F.2d 661 (7th Cir.  1987).**  Defendant School District's dress code policy is a policy of general application. Plaintiffs have failed to establish, or even argue at the hearing, that they have been

harmed in a particular, individualized way by the alleged defects in Defendant School District's procedure. Thus the substantive due process guarantees of the Fourteenth Amendment are not implicated or have been abandoned by the Plaintiffs' case.

### 2.  Procedural Due Process under Amendment XIV

"[A] violation of state law is not a denial of due process, even if the state law confers a procedural right." **Osteen v.  Hanley, 13 F.3d 221, 225 (7th Cir.  1993); *see also, e.g., Archie v. City of Racine*, 847 F.2d 1211 (7th Cir.  1988)(en banc); *Evans v.  City of Chicago*, 10 F.3d 474 (7th Cir. 1994)(en banc)(plurality opinion).** The standard of what procedural process is due under the Fourteenth Amendment is federal and cannot be modified by state statute. **Cleveland Bd.  of Ed. v.  Loudermill, 470 U.S. 532 (1985).** Therefore, even assuming *arguendo* that Defendant School District violated state laws and administrative codes, the violation is not a basis for a claim under the procedural due process rights guaranteed by the Fourteenth Amendment.

### 3.  State Law and Administrative Code Violations

The Illinois "Open Meetings Act" is codified at **5 Ill.  Comp.  Stat.  120/1 *et seq.*,** and gives citizens the right to advance notice of the meetings of all public bodies and the right to attend those meetings. Plaintiffs have not brought this complaint under the Open Meetings Act, but offer an alleged violation of the Act as evidence of a violation of their procedural due process rights. **§120/2.02(a)** requires that "[e]very public body give notice of the schedule of regular meetings, ... [and that] [a]n agenda for each regular meeting shall be posted." One alleged violation of the Act is that the dress code policy was considered at a special (not regularly scheduled) School Board meeting on March 3, 2005, which did not include consideration of the dress code on its agenda.

-12-

(Pls' Exs. 6, 7.) However, the same section of the Open Meetings Act states that "[t]he requirement of a regular meeting agenda shall not preclude the *consideration* of items not specifically set forth in the agenda." The dress code policy was not *adopted* until the next regularly scheduled meeting of the School Board on March 21, 2005. Pls' Exs. 8, 9. It is not a violation of the Act to direct someone to supply information for use and discussion at a future meeting where the issue is discussed with appropriate notice. The stated purpose of the special meeting, according to the agenda (Pls' Ex. 6), was to discuss student discipline and personnel. The request by Kurt Schroder to Superintendent Clark may have been an afterthought or a sudden recovery of memory, but there was nothing sinister about it. Furthermore, even a policy adopted at a special meeting cannot be attacked as improper, because only policies adopted at *closed* meetings can be so attacked. ***See Kyle v. Morton High Sch.*, 144 F.3d 448 (7ᵗʰ Cir.1998); *Chicago Sch. Reform Bd. of Trs. v. Martin*, 723 N.E.2d 731 (Ill. App. 1999); *Williamson v. Doyle*, 445 N.E.2d 385 (Ill. App. 1983).** Plaintiffs make much ado of the testimony of School Board secretary Lois Luther. Ms. Luther testified that she has never seen a policy passed in the manner that the revised dress code was passed. She testified that there is ordinarily a first reading and then, at a future meeting, the policy is listed on the agenda for a vote. However, she did not feel that there was anything secretive about the Board's actions nor that they tried to pass the policy in an underhanded manner. Moreover, as noted *infra*, the Board has the authority to suspend the first reading and vote immediately. (Pls' Ex. 12.)

The School Code does note require the Board to make detailed findings regarding its rationale for passing a policy. Nor does it require multiple readings of the policy prior to vote and passage. It does preclude adoption of a policy at the same meeting it is introduced but that scenario

did not occur here.  The dress code policy was listed on the agenda for and introduced at the December 13, 2004 Board meeting.  It was again on the agenda and considered at the Board meetings of January 18, 2005 and February 22, 2005 before its ultimate passage on March 21, 2005.  The agenda for March 21, 2005 listed it as a discussion item and the "final" dress code policy was attached to the agenda as an addendum.  As a result, the public had adequate notice of its contents, multiple opportunities to be heard and should not have been caught off-guard by its passage.

Plaintiffs also allege a violation of the Illinois School Code **(Ill. Admin. Code tit. 23 §1.210)** regarding the powers and duties of a School District.  Specifically, they allege that, in violation of **§1.210(b)(2)(B)**, the Board did not "ensure that advice and suggestions are received from all groups affected by the policy."  More specifically, plaintiffs allege that the Board did not take steps to ensure the participation of racial minorities and low-income students.  Leaving aside the possibility that Plaintiffs may lack standing to raise this issue as none are minority or low-income parents, the allegation fails.  The School District posted public notices of its meetings, sent out notice by mail, posted notice on its website, and otherwise complied with the Open Meetings Act in providing everyone in the district, parent or not, the opportunity to participate.  At the March meeting during which the policy was adopted, input was received from minority parents during the time set aside for public commentary and questions.  The Board furthermore created procedures whereby religious exemptions to the policy could be obtained, and whereby low-income students could obtain vouchers to assist them in purchasing clothes to comply with the policy, both in compliance with **105 Ill. Comp. Stat. §5/10-22.25b(ii)**. These vouchers are funded by donations and not tax dollars.  Plaintiffs also complain that sometimes their questions at Board meetings went unanswered, that some people were cut off while trying to speak, and that some agenda items were

-14-

not introduced until after the public participation session had ended.  But as discussed in Section

III.B, *infra*, any member of the public has the right to submit written questions and receive a written

answer within 60 days, even after a policy has received a vote.  Furthermore, Defendants testified

that the purpose of scheduling public comment early in the meetings is to avoid making members

of the public wait through a long meeting for their chance to comment.  No statute requires that

school board meetings be conducted in a certain order or that the public may force the board to do

research or offer immediate verbal responses to questions or concerns. The chronology of the agenda

permitted public comment and allowed the Board to respond at a later meeting based upon those

comments.

Plaintiffs allege several violations of the School Board's own policies over the course

of formulating and adopting the dress code policy.  One such allegation is that the Board delegated

to the Superintendent the duties of collecting information that would be relevant to the formation

of a dress code and of forming a "Uniform Committee" to assist in so doing, and that Plaintiff

parents were denied the opportunity to participate in the Uniform Committee.  None of the three is

a violation of School Board policy.  Referring to the School Board Policy as set forth in Pls' Ex.

12, the Court notes that under "Policy Development," "[t]he Superintendent is responsible for: (1)

providing relevant policy information and data to the Board . . . ." Furthermore, referring to Pls' Ex.

17, the Court notes that under "Superintendent Committees," "[t]he Superintendent creates

Superintendent committees as he or she deems necessary *and makes all appointments*"(emphasis

added).  This is reinforced by School Code **§10-21.4**: "The superintendent shall . . . perform such

other duties as the board may delegate to him." Defendant Clark had the opportunity to hand-pick

the committee if he so chose, but instead allowed administrators from both high schools to compose

committees of teachers, parents, and other interested parties. Even without these clauses, a public body's decision is not invalidated by failure to adhere to procedure when that decision is subsequently ratified by additional, properly held public meetings. ***See, e.g., Argo High Sch. Council of Local 571 v. Argo Cmty. High Sch. Dist.* 217, 516 N.E.2d 834 (Ill. App. 1987); *Lindsey v. Bd. of Ed.*, 468 N.E.2d 1019 (Ill. App. 1984); *Collinsville Cmty. Unit Sch. Dist. v. Witte*, 283 N.E.2d 718 (Ill. App. 1972).** Furthermore, even if the two delegations of authority at issue were violations of School Board Policy, and could not be subsequently ratified, the same School Board policy contains a clause that states that the Board may temporarily suspend any of its policies by a majority vote of the members present at any meeting, and that "[t]he failure to suspend with a specific motion does not invalidate the Board action." Pls' Ex. 12.

Plaintiff Hermerding alleges that she was denied the right to serve on the Uniform Committee. She has no such right. Public participation in the decisions of a local board is similar to a "town hall" meeting, and no individual has the right to be named to a committee or to receive immediate questions to answers asked of the board. ***Tyska v. Bd. of Ed. Of Twp. High Sch. Dist. 214*, 453 N.E.2d 1344 (Ill. App. 1983); *see also Lewis v. Spagnolo*, 710 N.E.2d 798 (Ill. 1999).**

All of Plaintiffs' pendent state law claims fail, and so it is very unlikely that Plaintiffs would succeed at a trial on the merits, because their petition for a preliminary injunction fails the first prong of the test.

## B.  ADEQUACY OF AVAILABLE REMEDIES AT LAW

Testimony was given during the preliminary injunction hearing regarding the monetary outlay required to comply with the dress code. Required monetary outlays resulting from

policies of general application, such as taxes, are not compensable injuries. If they were, they could

be compensated with money, which is a remedy at law.

The main thrust of the alleged injury to Plaintiffs is the denial of procedural due

process.  The remedy is to restore the status quo and require Defendants to afford the injured party

their due process.  However, there are two statutorily created (and therefore, legal) remedies of

which Plaintiffs have not availed themselves.  The first is created by the School Code, **Ill.  Admin.**

**Code.  tit.  23 § 5/10-6**:

> When the president or district superintended of schools receives a
> written correspondence from a resident within the school district's
> territory, requesting the consideration of a matter before the board,
> the author of the correspondence shall receive a formal written
> statement from an appointed official of the board stating the board's
> position on their request, no later than 60 days from the receipt of the
> correspondence by the president or district superintendent of schools.
> The formal written response from the board shall establish a meeting
> before the board or list the reasons for denying the request.

If invoked, the above statute would placate Plaintiffs' claims that some of their questions and

concerns were not addressed by the Board. Before requesting extraordinary relief from a federal

court sitting in equity, or from any court, a Plaintiff should avail himself of those remedies available

without filing suit.  They did not.

The second remedy provided at law is in the **Open Meetings Act, 5 Ill.  Comp. Stat.**

**§120/3**.  The Act sets a statute of limitations of 60 days from the day of the meeting alleged to be

in violation of the Act.  Plaintiffs filed no civil action during the statutory period.  The Court

recognizes Plaintiffs' argument that they do not now attempt to bring an action under the Act.  The

Court does not hold that the instant action is barred by the Act's statute of limitations; rather, the

Court notes that Plaintiffs had an adequate remedy at law and squandered it.  The failure to avail oneself of a legal remedy cannot be the basis for claiming an equitable remedy because no adequate legal remedy exists any longer.  The Court cannot extend or ignore the statute of limitations even for the most sympathetic excuse; as it stands, the excuses offered during the hearing, that Plaintiffs were too busy with their personal schedules, were unmoving at best.

Because adequate legal remedies exist, or existed, and Plaintiffs either have not availed themselves or can no longer avail themselves of these remedies, their claim also fails the second prong of the test for a preliminary injunction.


## C.  IRREPARABLE HARM

The irreparable harm prong of the test for a preliminary injunction is intended to determine whether the harm being suffered by the movant is so great that it must be stopped immediately before discovery and a trial on the merits.  The expenditure of money is almost never an adequate harm to justify a preliminary injunction, particularly when the amount of money expended is easily calculable. *See, e.g.*, *In re Arthur Treacher's Franchisee Litig.*, **689 F.2d 1137, 1145 (3d Cir.  1982).** Nor is Plaintiff Hermerding's complaint that the dress code will cause her to do more laundry. The denial of procedural due process can be sufficient to justify a preliminary injunction; however, the Court finds that the harms alleged in this case are not irreparable. Therefore Plaintiffs' claim also fails the third prong of the test for a temporary injunction.

## D.  OTHER FACTORS INAPPLICABLE

Because Plaintiffs failed to satisfy even one of the three elements of the threshold test for a preliminary injunction, the Court need not reach in detail questions of the balance of harms and

the public interest.  The Court briefly notes that the question of the public interest would almost certainly have weighed against granting the injunction, because of the likelihood that most of the families with children at Belleville East and West High Schools have already expended money in anticipation of complying with the new dress code policy because plaintiff's case was brought at the eleventh hour.   The Court also notes that granting the injunctive relief would invalidate the current dress code, thereby placing in question whether its predecessor would remain  intact.  Nobody could answer this question during the hearing.  If invalidating the dress code resulted in the complete absence of a dress code, third parties—such as students—could suffer harm because much of the dress code was devoted to student safety.

## IV.  CONCLUSION AND ORDER

### A.  MISCELLANEOUS ISSUES

At the conclusion of Plaintiffs' case and again at the conclusion of all testimony, Defendants moved for judgment as a matter of law under **Fed.  R.  Civ.  P.  52(c).M**otions for judgment as a matter of law  imply a judgment on the merits and are inapplicable to motions for injunctions. Under **Fed.  R.  Civ.  P. Rule 65(a)(2)**, a hearing for a preliminary injunction may be consolidated with a trial on the merits at the discretion of the court.  ***See, e.g.***, ***Am.   Train Dispatchers Dep't of the Bhd. Of Locomotive Eng'rs v.  Fort Smith R.R. Co.*, 121 F.3d 267 (7th Cir.  1997),** ***cert.  denied*, 522 U.S. 1016 (1997).** However, parties are entitled to clear notice of the court's intent to consolidate so that they will have time to prepare, ***Univ.  Of Texas v.  Camenisch*, 451 U.S. 390 (1981)**, and matters typically should not be consolidated when there has not been adequate discovery, ***Pughsley v.  3750 Lake Shore Drive Coop.  Bldg.*, 463 F.2d 1055 (7th Cir.**

**1972).** Therefore the Court declines to consolidate the motion for preliminary injunction with a trial on the merits, mooting the motions for judgement as a matter of law.

Although Defendants briefly mention the issue of laches, the Court's previously reached conclusions contained in this order obviate the need to discuss it at length. The delay in filing this case does not give rise to laches as a defense. Laches is a defense when the defendant has relied to its detriment on a plaintiff's failure to file suit. *See Bennett v.  Tucker***, 827 F.2d 63, 68 (7th Cir. 1987).** Such is not the case here. But as discussed in Section III.B *supra*, Plaintiffs' delay in filing is relevant to the Court's conclusion that Plaintiffs had an adequate remedy at law which they squandered.

### B.  ORDER

The Court **ENJOYS** subject matter jurisdiction over this case, **DENIES** Plaintiffs' motion to remand the case (Doc.  5), **DENIES** as moot Defendants' oral motions for judgment as a matter of law, and **DENIES** Plaintiffs' Motion for a Preliminary Injunction (Doc.  1).

**IT IS SO ORDERED.**

**DATED this 19th day of August, 2005.**


**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**

-20-